Kirk Callan SMITH, et ux., Petitioners,

v.

D.C. RENTAL ACCOMMODATIONS
COMMISSION, Respondent.

No. 13875.

District of Columbia Court of Appeals.

Argued May 16, 1979.

Decided Jan. 9, 1980.

Kirk Callan Smith, pro se.

Charles W. Hanke, Asst. Corp. Counsel, Washington, D.C., with whom Louis P. Robbins, Acting Corp. Counsel, Washington, D.C., at the time the case was argued, and John C. Salyer and Michael A. Cain, Asst. Corp. Counsel, Washington, D.C., were on brief, for respondent.

Before KELLY,. NEBEKER and HARRIS, Associate Judges.

NEBEKER, Associate Judge:

The petitioner, Mr. Smith, filed a petition with the Rental Accommodations Office on August 1, 1977, in his own behalf and that of his wife, co-tenant, Maria Dela Torres [hereinafter tenants], under the provisions of the Rental Accommodations Act of 1975.[1] This appeal involves review of a final decision and order of the District of Columbia Rental Accommodations Commission [hereinafter Commission].

The tenants assert various errors in the administrative proceedings: First, they complain that the Commission violated its statutory authority when it considered the landlord's cross-appeal; second, the Commission failed to "treble the amount by which the rent exceeded" the amount allowed by statute, as required by D.C.Code

1978 Supp., § 45–1655(a); and finally, the Rent Administrator and the Commission erred in their findings and review of issues concerning the discontinuance of intercom service, landlord retaliatory action, the adequacy of the notice of the rent increase and the sufficiency of the rent registration statement.

We hold the following: (1) the landlord's cross-appeal was untimely and should not have been considered by the Commission; (2) the Commission's computation of the rent for purposes of treble damages was contrary to law; (3) the Commission erred in concluding that the imposition of a penalty is the sole remedy for retaliatory action and that it had no statutory authority ·to enforce its orders; (4) the Administrator erred in failing to rule on the factual issues concerning landlord retaliatory action, the sufficiency of the rent registration statement, and the adequacy of the notice of the step three rent increase; and (5) the Commission exceeded its jurisdiction by making findings of fact.[2] We reverse and remand for further proceedings consistent with this opinion.

## I

The facts of this case, simply stated, involve tenants' complaints of lack of heat which were ultimately communicated to the District housing inspectors. It was alleged that after the rental agent learned that the tenants made the housing code complaints, she directed them to move. Subsequently, a notice was posted in the building informing all of the tenants that their rents would be raised on August 1.. Mr. Smith, upon inquiry, learned that the present rent charged was higher than the base rent reported by the landlord in his registration statement filed with the Commission. *See*

---

1. *See* the District of Columbia Rental Accommodations Act of 1975, D.C.Code 1978 Supp., §§ 45–1631 through –1674. (This act was repealed Mar. 16, 1978, D.C. Law 2–54, § 903, 24 D.C.R.R. 5334. Current legislation is the Rental Housing Act of 1977, D.C.Code 1979 Supp., §§ 45–1681 through –1699.27.)

2. The Commission concedes error in the Administrator's failure to decide the issue of the discontinuance of the intercom service. We do not address this matter. In addition, since we rule that the landlord's appeal was untimely and should not have been considered by the Commission, the improper designation of the landlord's manager as party to the appeal is not at issue.

D.C.Code 1978 Supp., § 45–1642(b). The tenants petitioned the Rent Administrator for an adjustment in the rent alleging various violations of the Rental Accommodations Act of 1975.

A hearing on the tenants' complaint was held by a Rental Accommodations Office Hearing Examiner on September 27, 1977. Neither the landlord nor his representative attended the hearing despite proper notice. The tenants requested a default judgment which was granted in part and denied in part in a decision issued by the Rent Administrator. The tenants appealed the administrator's decision to the Rental Accommodations Commission in a timely and proper fashion. The landlord, through his counsel, filed a late cross-appeal. A decision of the Commission was issued on the basis of both appeals and it is from that decision that the tenants seek review.

## II

■ The first issue we address is whether the Commission erred in its consideration of the landlord's cross-appeal of the Rent Administrator's decision. Under the relevant statutory provision, D.C.Code 1978 Supp., § 45–1652(g), an appeal from the Rent Administrator's decision "may be taken by the aggrieved party to the Commission within ten days after the decision . . .." Admittedly, the landlord's cross-appeal was not taken within the prescribed statutory time period. The tenants moved for dismissal of the cross-appeal citing its tardiness and lack of specificity required by "fundamental due process" and the Commission regulations.[3] The Commission concluded that it could waive the ten-day limit for good cause and denied the motion to dismiss. In its brief, the Commission contends that its construction of the statute is

reasonable in light of its statutory authority to "review a decision of the Rent Administrator . . . on its own initiative." D.C.Code 1978 Supp., § 45–1652(g). Thus, the Commission explains:

> It is true that, in deciding to accept the late-filed appeal, the RAC did not say that it was exercising its own initiative, but its failure to characterize its action in language which precisely tracks the language of the act on which its authority rests should not be permitted to obscure the substance of the action.

However, the record demonstrates that the Commission did not purport to review on its own initiative, but intended to allow the landlord to file a late appeal.

A second fatal flaw in the Commission's rationale for consideration of the cross-appeal is its untimely vote to review the decision. Under the Commission's regulations, there must be a two-thirds vote within five days of the expiration of the ten-day period for an appeal. *See* Regulations of the District of Columbia Rental Accommodations Commission, DCRR § 5.31 (spec. ed. Feb. 1977). According to the record the ten-day period expired February 8, 1978; however, the earliest vote to accommodate the late appeal was not taken until March 14, 1978. This vote was clearly not within the self-imposed five-day period. The Commission improperly entertained the landlord's appeal. *See generally Gaskins v. District Unemployment Compensation Board*, D.C.App., 315 A.2d 567 (1974) (the Board has no authority to waive the ten-day statutory period for filing an appeal that was untimely due to the appellant's wife's death). As the landlord's cross-appeal was ultimately the Commission's action on that appeal must be vacated.[4]

---

**3.** Since we have resolved this issue on the late filing of the cross-appeal, we do not reach the tenants' argument that the landlord's appeal was so vague and conclusory that it violated Commission Regulation § 5.30. We are unpersuaded by their arguments that the issues were so entwined as to necessitate a review of the cross-appeal in this regard.

**4.** Different times are often prescribed for cross-appeals than for appeals. D.C.App.R. 4

II(a)(1), for example, provides that "[i]f a timely notice of appeal is filed by a party, any other party to the proceeding in the Superior Court may file a notice of appeal within fourteen days of the date on which the first notice of appeal was filed. . . . " Neither the Commission nor the parties, however, have indicated that a similar rule would apply to the filing of a cross-appeal at the administrative level, or that such a provision exists.

## III

■ The second issue involves the Commission's computation of the amount of damages that can be awarded under D.C. Code 1978 Supp., § 45–1655(a). At the time of the Commission's order, § 45–1655(a) provided:

(a) Any person who—

(1) demands or receives any rent for a rental unit in excess of the maximum allowable rent applicable to that rental unit under the provisions of this subchapter, or

(2) substantially reduces or eliminates related services previously provided for a rental unit,

shall be held liable by the Rent Administrator for treble the amount by which the rent exceeded the applicable rent ceiling or for $50, whichever is greater.

In its order, the Commission concluded that this section "only requires treble the first month's overcharge or $50, whichever is greater," rather than applying the penalty to the full amount of the overcharge. To support its departure from the plain wording and apparent thrust of the section, the Commission cites a subsequent amendment to the section that allows "for a roll back of the rent to such amount as the Rent Administrator or Commission shall determine" in lieu of imposing treble damages. *See* District of Columbia Rental Housing Act of 1977, § 901 (effective March 16, 1978), D.C. Code 1979 Supp., § 45–1689(a)(2). We interpret the amendment as a substantive change in the law. Contrary to the Commission's contention that "the earlier act [gave] it discretion to award treble damages or to withhold such an award," the language of D.C.Code 1978 Supp., § 45–1655(a) is couched in mandatory rather than permissive terms; *e. g.*, the violator "*shall* be held liable." (Emphasis added.) Not only was the imposition of treble damages statutorily mandated, it indisputably applies to all months during which the overcharge was collected. Our conclusion is supported by the definition of "rent" found in D.C. Code 1978 Supp., § 45–1641(*1*) which reads:

The term "rent" means the entire amount of money, money's worth, benefit, bonus, or gratuity demanded, received, or charged by a landlord as a condition of occupancy or use of a rental unit, its related services, and its related facilities. "Rent", as used in D.C.Code 1978 Supp., § 45–1655(a), encompasses more than the "first month's" rent. Accordingly, the Commission's computation of the treble damages was contrary to law.

## IV

■ We now turn to the Commission's failure to review the issue of the landlord's retaliatory action and the Commission's conclusion that the sole remedy for a violation of the prohibition against landlord retaliatory action,[5] is the imposition of a penalty upon conviction after a trial de novo of the law and the facts pertaining to the offense. The Commission's regulations provide two remedies upon a finding that the landlord has engaged in retaliatory action:

*Remedies of Retaliatory Action*

Where the Administrator determines that a landlord has taken retaliatory action, as defined in Section 1.10(cc) of the Act, against a tenant, the Administrator may:

(a) Order the landlord to refrain from taking or continuing such retaliatory action provided, however, that nothing herein shall be construed to require any landlord or tenant in any action for eviction in the Superior Court to adjudicate the issue of retaliation before the Administrator instead of before such court; and

(b) Refer the matter to the Corporation Counsel for prosecution under Section 215(b) of the Act.

[Regulations of the District of Columbia Rental Accommodations Commission, DCRR § 10.10 (spec. ed. Feb. 1977).]

This Regulation gives the Rent Administrator the power to order the landlord to cease any retaliatory action. The Commission argues that the regulation is practically inef-

---

**5.** *See* D.C.Code 1978 Supp., § 45–1654.

fectual because there is no statutory grant of authority to enforce an order under subsection (a).

 We cannot agree with the Commission's conclusion. The statutory grant of authority to the Administrator and the Commission include the power to order a landlord to refrain from retaliatory action. In particular, D.C.Code 1978 Supp., § 45–1673, authorizes either the Administrator or the Commission to "commence a civil action to enforce any rule or decision." The power is analogous to the subpoena power granted to the Commission and the Administrator. *See* D.C.Code 1978 Supp., § 45–1632. Under § 45–1632(c)(1), power is expressly granted to "require by subpoena or otherwise the attendance and testimony of . . witnesses." "In the case of refusal to obey a subpoena," § 45–1632(c)(2) provides that the Administrator or Commission may request the Superior Court to order compliance with the subpoena. We hold that the Commission erred as a matter of law in concluding that it had no statutory authority to enforce its orders. In addition, we are aware of no law, and none has been cited to us, to indicate that a trial de novo is required to impose the penalties prescribed by § 10.10(a) of the Regulations and by D.C. Code 1978 Supp., § 45–1655(b).[6] We conclude that the Administrator was required to make a factual finding regarding the petitioner's allegations as to the landlord's retaliatory action and his findings would be

reviewable by the Commission. As the Commission admits that it did not decide this issue, we remand for a ruling by the Commission and the Administrator, as necessary.[7]

### V

Our final consideration is of those issues concerning the Administrator's findings and the Commission's review regarding the adequacy of the landlord's registration statement and notice of the rent increase.

### A. The registration statement.

D.C.Code 1978 Supp., § 45–1644(e), provides that "the rent . . . shall not be increased above the base rent unless . . the housing accommodation is registered in accordance with section 45–1642 . . .." Nor may the rent be increased unless "the tenant concerned has been given written notice . . .." D.C.Code 1978 Supp., § 45–1652(h). A registration statement form was filed on March 29, 1976. The tenants, however, contended at the hearing that the form was grossly inaccurate and incomplete, and therefore was not adequate to register the accommodation. Hence, the tenants reasoned, no rent may lawfully be charged above the base rent. The base rent is $125, and the tenants have paid $150 per month.

 The Administrator, in both the evaluation of the evidence and in the findings,

---

6. Further, the fine appears to be a civil penalty that does not involve a conviction.

7. In its decision, the Commission ruled that the Administrator did not find facts on this issue, but nevertheless concluded that the hearing examiner "made her ruling in her discussion of the evidence." The examiner's ruling stated: "There is not sufficient evidence in the record to support an allegation of retaliatory action against the petitioner by the respondent." Nothing further, in the way of support or reasoning for the statement, was offered by the examiner. Part of the evidence that the examiner considered was a recounting of the following conversation between "Mr. Smith," the tenant, and "Mrs. Scott," the landlord:

Mrs. Scott said to Mr. Smith, "You were the one who reported us to the housing inspector last winter, weren't you?" Smith answered,

"Yes, I did." Within seconds, Mrs. Scott responded, "I want your apartment by August first. That gives you six weeks." Later that evening, Mrs. Scott repeated the same statement in Mr. Smith's presence to Miss Steinbinder. Her threat, however, has yet to be carried out.

"Retaliatory action," is broadly defined by D.C. Code 1978 Supp., § 45–1654, and includes the "termination of a tenancy without cause; and any . . . form of threat or coercion." If indeed the examiner's ruling was a finding, although it was not denominated as such, we hold that it was erroneous as a matter of law because the above quoted statement alone constitutes "sufficient evidence in the record to support the allegation of retaliatory action against the petitioner by the respondent." The Commission erred in affirming on that issue.

stated that "it [was] apparent that the landlord gave false, misleading, and incomplete information on the registration statement." In his conclusions, the Administrator referred to the registration statement as "inaccurate and incomplete." Both the Administrator and the Commission ordered the landlord to file an amended statement. The Commission commendably expressed its fear that to invalidate this registration statement would "give every tenant a hunting license to comb through the registration files in hope of discovering some minor omission or technical defect . . . ." However, in this case the Administrator's findings hardly reflected a "minor omission or technical defect." In the Commission's decision, it concluded "that the landlord had substantially complied with the law and that the registration forms filed were valid [because nothing indicated that the mistakes were] willful [or] that the landlord should be penalized for violating the law's registration requirement." However, under *Meier v. District of Columbia Rental Accommodations Commission*, D.C.App., 372 A.2d 566, 568 (1977), the Commission's function does not extend to making findings, whether they regard substantial compliance or any other subject.[8] Furthermore, the standard employed by the Commission, "willful violation meriting a penalty," was erroneous. Willfulness is a prerequisite to a fine under D.C.Code 1978 Supp., § 45–

1655(b), but is irrelevant to the issue of substantial compliance with D.C.Code 1978 Supp., §§ 45–1642 and –1644(e). On remand, therefore, the Administrator should decide whether the landlord substantially complied with the registration requirement based on evidence in the record.[9] His decision would then be subject to review by the Commission under the review standard discussed in *Meier v. D.C. Rental Accommodations Commission, supra.*

B. Adequacy of the notice.

▮ Similarly, the Administrator should have ruled on the adequacy of the notice of the step three rent increase. The Commission conceded in its opinion that the Administrator did not explicitly rule on the issue. The Administrator did go so far as to write that "[t]he rent increase . . . is defective on its face, because it is not completely filled out as required, by the landlord respondent." Construing this statement as a finding that the landlord "incorrectly noticed" the increase, the Commission nevertheless concluded that the landlord was entitled to the increase. Such a conclusion is not supported by substantial evidence in the record.

The thrust of the ruling seemed to reflect an attitude which permeated the Commission's opinion and provided a main basis for the oral argument presented before us.

---

**8.** As explained in *Meier v. D.C. Rental Accommodations Commission, supra*, "the Administrator is the decisionmaker" and the Commission reverses only when it finds the decision to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [law] or unsupported by . . . substantial evidence in the record . . . ." D.C.Code 1978 Supp., § 45–1652(g).

**9.** The Administrator is required under the Rental Accommodations Commission's Regulations to issue a written decision on each matter properly before it explaining his decision so that meaningful review by the Commission is possible. *See* § 5.10, as amended June 29, 1977, which reads:

(a) Every matter properly before the Administrator shall be disposed of by a decision written by the Administrator or his delegated representative.

(b) Each written decision of the Administrator or his designee shall include a discussion of the evidence of record and applicable law the resulting findings of fact and conclusions of law on all contested or otherwise relevant issues, and an order setting forth the disposition required or authorized by said findings and conclusions.

(c) Each decision shall include a notice of the parties' right to appeal and notice that failure to file a timely appeal forecloses the right to review by Commission and, later, the District of Columbia Court of Appeals.

(d) Each decision shall include notice that it will be effective from the day it is rendered notwithstanding an appeal to the Commission.

(e) On the day of its issuance, the Administrator shall serve a copy of each decision on every person affected thereby. An explanation of the procedure for filing an appeal shall be included with each copy so served.

Contrary to what are undoubtedly well-intentioned notions held by the Commission, it is not empowered to tread on individual rights in order to achieve "substantial justice." Rent control restricts the use of private property and the rights attendant to its ownership. It does violence to natural economic laws. At the same time it confers rights. If the administrative proceedings are geared to the amorphous concept of "substantial justice," then many of those limits will be ignored and rights will be abrogated to the detriment of both lessors and lessees.

*Reversed and remanded.*[10]

10. On remand, the Administrator may consider the proper denomination of the landlord, an issue which he has not considered and which we need not resolve.